UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ISIDORO DELEON,

                              Plaintiff,

                            DECISION AND ORDER
      -v-                                  05-CV-6682 CJS

ELIZABETH HOFFMAN, et al.,

                              Defendants.
_____

APPEARANCES

For Plaintiff:              Isidoro Deleon, *pro se*
                                 93-A-3163
                                 Shawangunk Correctional Facility
                                 P.O. Box 700
                                 Shawangunk, New York 12589

For Defendants:          Maritza C. Buitrago, Esq.
                                 Assistant Attorney General
                                 Office of the New York State Attorney General
                                 144 Exchange Boulevard, Suite 200
                                 Rochester, New York 14614

INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 1983, in which Isidoro Deleon ("Plaintiff"), a prison inmate, proceeding *pro se*, is suing various employees of the New York State Department of Correctional Services ("DOCS") who were employed at Wende Correctional Facility ("Wende") and Elmira Correctional Facility ("Elmira"). Among other allegations, Plaintiff maintains that the defendants tampered with his private and legal mail. Now before the Court is Defendant Janet Geiger's ("Geiger") motion (Docket No. [#60]) to dismiss Plaintiff's Third Amended Complaint (Docket No. [#56]), and Plaintiff's cross-motion

(Docket Nos. [##66,72[1]]) for leave to file another amended complaint. For the reasons that follow, the applications are denied as moot.

BACKGROUND

On November 23, 2005, Plaintiff commenced this action against several employees at Wende, accusing them of tampering with his mail. On September 26, 2007, with the Court's permission, Plaintiff filed an Amended Complaint (Docket No. [#19]), adding additional claims of mail tampering against other employees at Wende.

On June 18, 2008, Plaintiff, who had been transferred from Wende to Elmira, filed a Supplemental Complaint (Docket No. [#37]), alleging claims of mail tampering at Elmira.[2] In relevant part, the Supplemental Complaint included claims against "John Doe, Mailroom Supervisor at Elmira." Subsequently, Plaintiff obtained information, through a Freedom of Information Law ("FOIL") request, that Geiger was the Mailroom Supervisor at Elmira during the relevant period. (*See*, Docket No. [#72], Letter to Hon. Marian W. Payson, dated January 27, 2009). On August 5, 2008, the Court granted Plaintiff's request to amend the caption of the Complaint to substitute "'J. Geiger,' an employee of the Elmira Correctional Faciltiy," as the defendant "previously identified as "John Doe, Mail Room Supervisor." (Decision and Order, Docket No. [#42]).

---

[1]The Court construes Plaintiff's cross-motion to amend as consisting of documents 66 and 72.

[2]Plaintiff alleged the following facts: In 2005, while he was confined at Elmira, he had commenced an action in this Court. The Court had ordered Plaintiff to provide certain information to the Court, in order to avoid dismissal of the action. On December 6, 2005, Plaintiff placed a letter responding to the Court's order in the mail at Elmira. According to Plaintiff, the letter was not delivered and the action was dismissed. However, at Plaintiff's request, the Court later re-opened the action. On August 3, 2006, Plaintiff sent another letter to the Court from Elmira, however the letter was not sent out until seven days later. Plaintiff attempted to mail other letters that also were not delivered. Plaintiff filed various inmate grievances concerning mail tampering. Subsequently, in retaliation, Plaintiff was issued a false misbehavior report, accusing him of harassing a female nurse.

On November 3, 2008, Plaintiff filed a motion (Docket No. [#52]) to file a third amended complaint. Specifically, Plaintiff stated that the amendment was necessary because, through discovery, he had learned that Andrew Shaw and William Bills were the supervisors of Elmira's Mail Room at the relevant time. Plaintiff further stated that previously, he had mistakenly named Geiger as the Mail Room Supervisor. Defendants did not oppose the motion, and on November 13, 2008, the Court issued a Decision and Order (Docket No. [#55]), granting Plaintiff's motion to file a third amended complaint, and directing that, "plaintiff shall file by November 19, 2008, a Third Amended Complaint containing *all claims* upon which he had been permitted to proceed." (Emphasis added).

In the Third Amended Complaint, Plaintiff alleged, in relevant part, that defendants Andrew Shaw ("Shaw"), William Bills ("Bills"), and Renee Gates ("Gates") tampered with his mail. Geiger is also listed in the caption of the action. However, the complaint contains no factual allegations concerning Geiger. Nevertheless, the complaint demands one million dollars in damages from Geiger.

On January 16, 2009, Geiger filed the subject motion to dismiss the Third Amended Complaint against her, since the complaint contains no factual allegations about her. On February 24, 2009, Plaintiff filed a response (Docket No. [#66]), purportedly in opposition to Geiger's motion. Plaintiff stated, in relevant part: "Plaintiff respectfully request[s] this Court permission [sic] to delete defendant Geiger as a party to this action, and to amend the pleading with new claims or factual allegations concerning defendants William Bills and Renee Gates." (Docket No. [#66] at 2). The Court construes Plaintiff's submission as seeking leave to file a fourth amended complaint.

3

On May 4, 2009, Plaintiff filed another submission (Docket No. [#72]), also purportedly in opposition to Geiger's motion to dismiss. In the submission, Plaintiff reiterates that Geiger should be "deleted" from this action, and again requests leave to file a further amended complaint asserting additional claims against Bills and Gates. However, the matter is complicated by the fact that, in his accompanying memo of law, Plaintiff indicates that he is still unsure who was actually the Mail Room Supervisor at Elmira during the relevant period. Additionally, Plaintiff states that he "should have been provided sufficient notice of the deficiencies in the complaint and an opportunity to amend the complaint and correct them with meritorious factual allegations with respect to defendant Geiger." (Docket No. [#72], Memo of Law at 3). Furthermore, Plaintiff states that he "respectfully declines to delete defendant Geiger as a party from this action until the defendant's counsel provide from copying and inspection documents from the Central Office of Personnel of New York State DOCS showing who, in fact, were [sic] the Mail Room Supervisors assigned to Elmira as alleged by Plaintiff." *Id*. at 4.

After the briefing schedule on Geiger's motion to dismiss was closed, on June 24, 2009, Plaintiff filed a motion to compel discovery (Docket No. [#79]). The discovery that Plaintiff seeks concerns the identity/identities of the Elmira Mail Room supervisor(s) during the relevant period. The Motion to Compel is currently pending before the Honorable Marian W. Payson, United States Magistrate Judge. Additionally, on July 13, 2009, Plaintiff filed a document, docketed as a motion to amend (Docket No. [#84]), which seeks leave to amend the complaint to indicate that Geiger's job title was "Senior Mail & Supply Clerk [Clerk 2]," and to add additional allegations concerning Geiger's alleged personal involvement in the alleged mail tampering.

4

DISCUSSION

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, e.g., *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> \*\*\*
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. See *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. See *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Geiger maintains that the Third Amended Complaint fails to state a claim against her, because it does not plead that she was personally involved in the alleged constitutional violations. In that regard, in deciding a motion to dismiss under FRCP 12(b)(6), the Court must

> accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor. See *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). To survive a Rule 12[b] motion, [the] "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, ---L.Ed.2d ---- (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Johnson v. Rowley*, 569 F.3d 40, 2009 WL 1619401 at *2 (2d Cir. Jun. 11, 2009). As to that,

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (citations omitted). In sum, the facts alleged must "permit the court to infer more than the mere possibility of misconduct." *Id*. at 1950. "Legal conclusions" need not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citation omitted). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff has requested an additional opportunity to amend the complaint. Where, as here, a party seeks to amend a pleading beyond a court-imposed deadline for such motions, the applicable legal principles are clear:

> Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a court should freely give leave to amend when justice so requires. . . . Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. Where, as here, a scheduling order governs amendments to the complaint, see Fed.R.Civ.P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."), the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be

<mark>6</mark>

> modified except upon a showing of good cause. Whether good cause exists turns on the diligence of the moving party.

*Holmes v. Grubman*, 568 F.3d 329, 334-335 (2d Cir. 2009) (citations and internal quotation marks omitted).

At the outset, liberally construing Plaintiff's submissions in light of the entire record in this action, it is clear that Plaintiff does not wish to discontinue this action against Geiger. Rather, it appears that Plaintiff's theory is that Gates, Bills, and Geiger were each possibly involved in the alleged mail tampering at Elmira. Plaintiff contends that his failure to include any factual allegations concerning Geiger in the Third Amended Complaint was due to his misunderstanding of the Court's Decision and Order (Docket No. [#55]). On the other hand, Plaintiff appears to indicate that he would be willing to dismiss Geiger from the case if he was provided discovery that demonstrated that Geiger was not involved in the alleged mail tampering. In that regard, Plaintiff argues that Defendants have not been responsive to his discovery demands.

In any event, after Geiger's motion to dismiss and Plaintiff's cross-motion to amend were briefed, several things happened: Defendant provided plaintiff with additional discovery; Plaintiff filed a motion to compel; and Plaintiff filed a motion to amend based on the additional discovery that he received. Once the motion to compel is resolved by Magistrate Judge Payson, it appears that discovery will be closed, and Plaintiff will have all of the information that he is going to get through discovery concerning the involvement, if any, of Gates, Bills, and Geiger, in the alleged mail tampering at Elmira. If the motion to compel is granted, Plaintiff may receive additional discovery that will affect the motion to amend. If the motion to compel is denied, Plaintiff nevertheless wants to amend his

7

complaint to add additional allegations concerning Geiger.[3]  Regardless of what happens with the motion to compel or the motion to amend, Defendant will have an opportunity to bring a dispositive motion once discovery is completed.  For these reasons, the Court finds that, rather than dealing with these issues in a piecemeal fashion, it makes sense to wait until the completion of discovery, which is imminent.  Accordingly, the applications are denied without prejudice.

CONCLUSION

Defendant Geiger's motion to dismiss (Docket No. [#60]) and Plaintiff's cross-motion to amend (Docket Nos. [##66, 72]) are denied, without prejudice.  Plaintiff's motion to compel (Docket No. [#79]) and Plaintiff's motion to amend (Docket No. [#84]) remain pending before Magistrate Judge Payson.

SO ORDERED.

Dated: July 21, 2009
Rochester, New York

*/s/ Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge

---

[3]As mentioned earlier, Plaintiff's submissions in opposition to Geiger's motion to dismiss indicated that Plaintiff wanted to supplement his allegations against Gates and Bills.  If that is still the case, Plaintiff will have to move to amend the complaint to add such allegations.  Plaintiff is also advised that a motion to amend a complaint should include a proposed amended complaint. *Smith V. Planas*, 151 F.R.D. 547, 550 (S.D.N.Y. 1993) ("Rule 7(b) of the Federal Rules of Civil Procedure requires that motions "state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed.R.Civ.P. 7(b). In order to satisfy the prerequisite of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought.") (citing Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1485 (1990)).